**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **T.K.J.,** | : | |
| **Plaintiff,** | : | |
| **v.** | : | **Case No. 5:25-cv-307-CHW** |
| **COMMISSIONER OF SOCIAL SECURITY,** | : | **Social Security Appeal** |
| **Defendant.** | : | |

**ORDER**

This is a review of a final decision of the Commissioner of Social Security denying Plaintiff T.K.J.'s application for disability benefits. The parties consented to have a United States Magistrate Judge conduct all proceedings in this case, and as a result, any appeal from this judgment may be taken directly to the Eleventh Circuit Court of Appeals in the same manner as an appeal from any other judgment of the United States District Court. Although Plaintiff has not shown an error in the ALJ's treatment of the medical opinion or development of the residual function capacity (RFC), the Court is unable to determine if the ALJ's step five analysis is supported by substantial evidence. Therefore, Plaintiff's case is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).

**BACKGROUND**

Plaintiff applied for Title II disability benefits on November 4, 2020, alleging disability beginning on September 9, 2019, based on the following impairments: plantar fasciitis and anxiety-panic disorder. (R. 77). Her date last insured (DLI) is December 31, 2027. (R. 17). After Plaintiff's applications were denied initially and on reconsideration at the state agency level of review (Exs.

1A-4A), Plaintiff requested further review before an administrative law judge (ALJ). The reviewing ALJ held a telephonic hearing on May 22, 2024, at which a non-attorney representative appeared with Plaintiff. (R. 40-75). The ALJ issued an unfavorable opinion on August 20, 2024. (R. 14-36). Plaintiff's request for review of that decision by the Appeals Council was denied on June 12, 2025. (R. 1-6). The case is now ripe for judicial review. *See* 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

Judicial review of a decision of the Commissioner of Social Security is limited to a determination of whether that decision is supported by substantial evidence, as well as whether the Commissioner applied the correct legal standards. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence" is defined as "more than a scintilla," and as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Eleventh Circuit has explained that reviewing courts may not decide the facts anew, reweigh the evidence, or substitute their judgment for that of the Commissioner. *Id.* Rather, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the evidence preponderates against it.

## EVALUATION OF DISABILITY

Social Security claimants are "disabled" if they are unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). To be eligible for benefits, Plaintiff's disability must be established prior to her date last insured. *See id.*

The Social Security Regulations outline a five-step sequential evaluation process for determining whether a claimant is disabled: "(1) whether the claimant is currently engaged in

substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience." *Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v)).

**DISABILITY EVALUATION**

Following the five-step sequential evaluation process, the reviewing ALJ made the following findings in this case. At step one, the ALJ found that, despite having performed some work during the relevant period, Plaintiff had not engaged in substantial gainful activity since September 9, 2019, the alleged onset date. (R. 19). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: rheumatoid arthritis, diabetes, obesity, bilateral knee osteoarthritis, bilateral foot and ankle degenerative joint disease/osteoarthritis; plantar fasciitis; history of bilateral Achilles tendon surgeries; and generalized anxiety disorder. (R. 20). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments meeting or medically equaling the severity of one of the listed impairments. (*Id.*) Therefore, the ALJ assessed Plaintiff's RFC and determined that Plaintiff was capable of performing light work except:

> [T]he claimant can stand and/or walk, in any combination, for a total of four hours out of an eight-hour day workday. The claimant can occasionally engage in pushing and pulling, including operation of foot controls, with the bilateral lower extremities. The claimant can occasionally climb ramps and stairs, but never climb

> ladders, ropes, or scaffolds. The claimant can occasionally balance, stoop, kneel, and crouch. She can never crawl. The claimant can have occasional exposure to unprotected heights, moving mechanical parts, and vibration. The claimant can understand, remember, and carry out simple instructions. She cannot perform work requiring a specific production rate, such as assembly line work or work that requires hourly quotas. The claimant can deal with occasional changes in a routine work setting. She can frequently interact with supervisors and coworkers, but never interact with the public.

(R. 22-23).

Based on this RFC, the ALJ found at step four that Plaintiff was not capable of performing any past relevant work. (R. 28). On the alleged onset date, Plaintiff's age placed her within the younger individual category, but by the date of the decision, her category changed to "closely approaching advanced age." (*Id.*). After hearing from a vocational expert, reviewing the record, and considering Plaintiff's age, education, work experience, and RFC, the ALJ found, over Plaintiff's post-hearing objection (Ex. 25E), that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (R. 28-29). The representative positions noted were office helper, table worker, and machine tender. (R. 29). Accordingly, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act any time from the alleged onset date through the date of the decision. (R. 29-30).

**MEDICAL AND HEARING RECORD**

Plaintiff's primary challenge rests on whether the ALJ properly considered the medical opinion and records of Dr. Evaristus Oshiokpekhai (Dr. Osh), Plaintiff's podiatrist. Thus, this summary primarily focuses on Dr. Osh's records. However, the entire medical record has been

reviewed in consideration of this case. This summary also discusses the vocational expert's testimony and the ALJ's consideration of the number of jobs available to Plaintiff at step five of the disability analysis, which relates to Plaintiff's second enumeration of error.

*Dr. Osh's Medical Opinions and Treatment Records*

At the time of the hearing before the ALJ, Plaintiff had treated with Dr. Osh for about four years. (Exs. 1F-8F, 10F, 12F-16F, 20F, 26F, 28F). She first visited Dr. Osh in September 2019 for severe right foot pain that had been ongoing for six months, worsened with standing, and sometimes interrupted her sleep. (R. 502, 508). Dr. Osh diagnosed Plaintiff with plantar fasciitis and short Achilles tendons in both ankles. (R. 510). Dr. Osh recommended TAL surgery with Plaintiff, which is a minimally invasive Achilles tendon lengthening surgery, a possible joint capsular release procedure, as well as custom orthotics. (R. 505-506, 511-512). X-rays also were ordered, to rule out other causes of Plaintiff's pain. (R. 512). Other early treatment recommendations included wearing proper shoes, inspecting her feet daily, and elevating her feet 20 minutes per day. *See* (R. 507). On September 25, 2019, Plaintiff received an injection while she waited for surgery. (R. 534). She reported unbearable pain but walked with a normal gait. (R. 534-536). Dr. Osh also diagnosed Plaintiff with a right foot spur and Charcot's joint on both feet and ankles. (R. 536). In addition to injections, Plaintiff received soft casts for support and compression for both legs. (R. 536-537).

Plaintiff underwent TAL surgery, capsular release, and a manipulation on her right foot and ankle on October 14, 2020 (R. 554-562), and on her left side on October 26, 2020. (R. 952-961). After the six-week post-op appointment for the right foot, Plaintiff had mild soreness and swelling but reported that her right foot was "so much better." (R. 892). By December 2019, Plaintiff reported some numbness at the surgical site. (R. 898). She continued to notice pain when

walking. (R. 898). In May 2020, Plaintiff reported numbness in both ankles and stated that ankle pain made sleep difficult. (R. 923).

Following the second surgery, Plaintiff had mild pain at the surgical site and reported pain in her right foot. (R. 1000). In early December 2020, Plaintiff reported no pain in her left foot and expressed feeling good about the second procedure. (R. 1014). In late December 2020, Plaintiff complained of numbness in her left foot. (R. 973). Pain was also present in January 2021. (R. 1021). Plaintiff's reports of numbness in both feet continued in February 2021 (R. 1035) and extended to both ankles in March 2021, leading to balance issues. (R. 1043). In April 2021, at about 6 months post-op, Plaintiff reported improvement with pain medication. (R. 1058).

Plaintiff's treatment with Dr. Osh as documented in the record before the ALJ continued into 2022 and 2023. At a January 2022 visit, Plaintiff reported significant decreased pain in her left foot and noted that she was walking better overall. (R. 1176). A March 2022 note suggested that Plaintiff's symptoms were chronic, even through the surgeries did help "a little bit." (R. 1335). In April 2022, Plaintiff continued to complain about pain in her feet that kept her from standing too long. (R. 1556). She experienced pain between 51-75% of her awake time. (R. 1558). The same pain rate was noted in August 2022, and Plaintiff underwent hydrotherapy at the appointment. (R. 1522). At later appointments in 2023, Plaintiff continued to complain about pain in her ankles and feet. *See, e.g.*, (R. 1961, 1968). Plaintiff was also seen for general foot care. (R. 1964, 1970).

Germane to Plaintiff's challenge in this case are the letters, questionnaires, and progress notes that Dr. Osh provided throughout Plaintiff's treatment. In March 2020, Dr. Osh opined that Plaintiff could walk 4 to 5 hours in a 10-hour time period and only in a one-hour block, because even short distances would be painful and she must keep pressure off her feet. (R. 879). Plaintiff

could sit and stand continuously with normal breaks. (*Id.*) He said that Plaintiff could frequently drive because her right foot surgery was completed. (*Id.*) In May and July 2020, Dr. Osh checked that Plaintiff could sit continuously with standard breaks but also limited her to 5 hours total during the day. (R. 882, 885). He also listed Plaintiff's condition as "improved." (*Id.*) In Plaintiff's December 2020 progress report, Dr. Osh attributed no specific sitting, standing, or walking capacity to Plaintiff and stated that her condition was unchanged, presumably due to her left TAL procedure. (R. 993).

In a January 2021 letter written in support of Plaintiff's disability claims, Dr. Osh stated that Plaintiff's chronic pain was unresolvable. (R. 981). He stated that Plaintiff could not return to any work that required excessive standing or walking. (*Id.*). It was Dr. Osh's opinion that Plaintiff's disabilities were permanent. (*Id.*) The April 2021 report showed that, in Dr. Osh's opinion, Plaintiff could not work a normal shift; could not bend, kneel, or climb; and could not perform any work-related movements with her upper extremities. (R. 1325). He checked no boxes concerning Plaintiff's ability to sit, stand, or walk. (*Id.*) Her prognosis remained unchanged. (*Id.*) The November 2021 progress report was the same except that Dr. Osh made no notations about Plaintiff's ability to perform activities with her upper extremities. (R. 1328).

There are two progress reports from February 2022. On one questionnaire, Dr. Osh again stated that Plaintiff could sit continuously but could only intermittently stand and walk for four hours in a workday, two hours at a time. (R. 1330). Plaintiff could frequently drive. (*Id.*) On a different form, Dr. Osh modified Plaintiff's ability to walk to only one hour at a time but did not suggest any total hours that she would be able to stand or walk in a day. (R. 1332). Dr. Osh limited Plaintiff to driving only occasionally. (*Id.*) Her overall condition was unchanged. (*Id.*) The September 2022 report provided no new recommendations or prognosis. (R. 1390).

In response to a January 2023 insurance review, Dr. Osh recommended that Plaintiff be considered permanently disabled. (R. 1578). Dr. Osh completed another questionnaire in November 2023, in which he stated that Plaintiff was disabled from working any full or part-time job. (R. 1943). He severely limited Plaintiff's ability continuously to stand and walk and further suggested that Plaintiff could only continuously sit for one hour per day without breaks. (*Id.*) He limited Plaintiff's ability to reach above shoulder level. (R. 1944). He again described Plaintiff as totally and permanently disabled. (*Id.*)

*Vocational Expert Testimony and Post-Hearing Objections*

Vocational expert (VE), James R. Newton testified at Plaintiff's hearing before the ALJ. (R. 67-74). In response to the first hypothetical posed by the ALJ, the VE foreclosed any past work but found several jobs existing in significant numbers in the national economy which Plaintiff would be able to perform. (R. 69-70). The VE testified that under the second hypothetical, which modified the first one and most closely resembled Plaintiff's final RFC, Plaintiff would be able to perform roles such as office helper (100,000 jobs available); table worker (92,000 jobs available); and machine tender (98,000 jobs available). (R. 70-71). The VE opined that jobs would still be available to Plaintiff even at a sedentary RFC. (R. 71). The VE testified that time off task would be greater than 10% and that absenteeism of more than one day per month would likely not be tolerated by an employer. (*Id.*) Lastly, the VE testified that any other information, such as absenteeism, time off task, and other light work RFC modifications, provided from outside the *Dictionary of Occupational Titles* (DOT), was based on his personal experience and another source which was inaudible on the transcript. (R.71-72).

Plaintiff's non-attorney representative, Elizabeth Montefu, questioned the VE about the sources he used to support the available job numbers that he quoted. (R. 72). The VE explained

that the statistics had been collected from the Bureau of Labor Statistics and that he utilized Job Browser Pro. (*Id.*) The VE testified that the job title numbers he provided were specifically from the DOT. (R. 73). Ms. Montefu posed her own hypotheticals to the VE but otherwise did not challenge his testimony at the hearing. (R. 74-75).

After the hearing, Ms. Montefu submitted a lettrer brief challenging the veracity of the VE's testimony as to the number of jobs available for each representative position, as well as whether those positions fit within the hypotheticals posed by the ALJ. (Ex. 25E, R. 404). She attached statistics from the Job Browser Pro database and argued that the true numbers of available positions were far below those testified to by the VE, such that his testimony was unreliable and could not support adverse findings at step five. (*Id.*) She also highlighted and corrected a misidentified DOT code number for the office helper position. (*Id.*) The information that Ms. Montefu provided reflected the following job numbers for each position: office helper (5285 jobs), table worker (55 jobs), and machine tender (4 jobs). (R. 404, 410, 412, 418).

The ALJ found that Plaintiff could perform work as an office helper, table worker, and machine tender and adopted the VE's testimony regarding the number of positions available. (R. 29). The ALJ acknowledged that the VE provided the incorrect "office helper" DOT number but ultimately rejected Plaintiff's post-hearing challenge to VE's testimony by finding any job number discrepancies resulted the VE's use of additional sources. (R. 29). The ALJ also noted that, even without the misnumbered office helper position, the remaining jobs that Plaintiff could perform existed in significant numbers such that a finding of "not disabled" was warranted at step five. (*Id.*)

## ANALYSIS

Plaintiff argues that the ALJ 's decision should be reversed for two reasons. First, Plaintiff suggests that the resulting RFC is not supported by substantial evidence because the ALJ improperly considered Dr. Osh's medical opinion and records. (Docs. 14, 18). Second, Plaintiff contends that the ALJ's step five findings are not supported by substantial evidence because the representative jobs cited by the VE do not exist in significant numbers. (*Id.*) As explained below, the ALJ adequately considered Dr. Osh's medical opinion. However, the Court is unable to determine whether substantial evidence supports the ALJ's step five conclusions as to the representative job numbers available to Plaintiff, which warrants remanding Plaintiff's case to the Commissioner.

*The ALJ's Consideration of the Medical Opinion*

Plaintiff suggests that the ALJ's decision fails to sufficiently demonstrate that the ALJ used the correct standards to evaluate Dr. Osh's medical opinion, such that the RFC determination is not supported by substantial evidence. Because Plaintiff filed her applications for benefits in November 2020, the weight given to all medical opinion evidence – even those opinions from Plaintiff's own treating physicians – is governed by 20 C.F.R. § 404.1520c. Under these regulations, the agency no longer defers or gives any specific evidentiary weight to any medical opinion, even those from a claimant's own medical sources. 20 C.F.R. § 404.1520c(a). The decision instead must articulate how persuasive the medical opinions and prior administrative findings were found to be. 20 C.F.R. § 404.1520c(b). The decision is not required to articulate the determination for each and every record, however, and instead may discuss the source of the opinion in a single analysis. 20 C.F.R. § 404.1520c(b)(1). The following factors will be used to consider and weigh the record: supportability, consistency, relationship with the claimant, and

specialization. 20 C.F.R. § 404.1520c(c)(1)-(4). The most important factors are supportability and consistency, and the decision must state how these factors were considered in the disability determination. 20 C.F.R § 404.1520c(b)(2).

The ALJ correctly identified and applied the applicable legal standards, and the decision adequately explains his findings and conclusions. After the ALJ found that Plaintiff had medically determinable impairments that could reasonably be expected to cause her alleged symptoms (R. 25), the ALJ next had to evaluate the intensity and persistence of Plaintiff's symptoms and their effect on her ability to work, by considering the objective medical evidence, the claimant's daily activities, treatment and medications received, and other factors concerning functional limitations and restrictions due to her symptoms. *See* 20 C.F.R. § 404.1529. The ALJ found that Plaintiff's descriptions "concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record…." (R. 25).

The regulations found in 20 C.F.R. § 404.1520c, outlined above, govern the consideration of medical opinions in context of this evaluation, as there is no longer a treating physician rule or deference. Additionally, "[i]f the ALJ discredits subjective testimony, [she] must articulate explicit and adequate reasons for doing so." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). Plaintiff correctly notes that the post-March 27, 2017 regulations do not change the requirement that the ALJ must explain the factors considered with particularity. Otherwise, "'…it [would be] impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.' [When] the ALJ fails 'to state with at least some measure of clarity the grounds for his decision,' [the Court] will decline to affirm 'simply because some rational might have supported the ALJ's conclusion.'" *Winschel*, 631 F.2d at 1179 (citations omitted).

The ALJ acknowledged Plaintiff's documented lower extremity impairments, Plaintiff's subjective complaints and symptoms, and Dr. Osh's clinical notes and opinions. (R. 23-28). The ALJ fairly summarized Plaintiff's treatment with Dr. Osh, especially considering that there is no requirement for the ALJ to discuss individual visits and opinions. (*Id.*) The ALJ did not ignore Plaintiff's symptoms and Dr. Osh's observations of Plaintiff. The ALJ acknowledged both TAL surgeries that Dr. Osh performed and noted that Plaintiff's symptoms and reports of pain ebbed and flowed. For example, the ALJ specifically referenced the visits where Plaintiff reported initial post-op improvement (R. 23) before complaining of continued pain, especially in her right foot, that needed additional treatment. (R. 24). The ALJ also recognized later records which show Plaintiff's osteoarthritis diagnosis followed by physical therapy as late as 2023. (R. 25). Beyond the acknowledged surgeries, the ALJ found that Plaintiff's treatment was conservative. Plaintiff challenges that description (Doc. 14, p. 14), but even Dr. Osh used "conservative" to describe his treatment of Plaintiff. *See, e.g.*, (R. 1867).

The ALJ next considered all the opinion evidence, including Dr. Osh's many progress reports and questionnaires. (R. 27-28). The ALJ ultimately found Dr. Osh's opinions were not persuasive. (R. 27). The ALJ specifically rejected the January 2023 narrative (R. 1867) because "no specific work limitations were given." (R. 27). The ALJ next cited and discounted the many progress report questionnaires that Dr. Osh completed, which placed very restrictive limits on Plaintiff's ability to complete work-related tasks. (*Id.*) The ALJ found that these opinions were "not persuasive [because they] are not supported by the treatment records from this source showing mostly normal exam findings and conservative treatment. They are further inconsistent with the work after the alleged onset date." (*Id.*)

To counter this conclusion, Plaintiff highlights portions of the treatment record to show that that nearly all her visits with Dr. Osh documented abnormal or remarkable findings. (Doc. 14, p. 14-15). Plaintiff also points to over 50 visits that ended in recommendations to elevate her feet "above [her] heart 20 min qd" and/or "at least 20 minutes at a time while sitting" to discredit the ALJ's assessment of Dr. Osh's records. (Doc. 14, p. 7). These examples do not demonstrate that the ALJ inappropriately considered Dr. Osh's records and opinions. For each visit that Plaintiff cited as being consistent with Dr. Osh's opinions, there are potions of those visits that likewise support the ALJ's analysis. For example, nearly every one of the "abnormal" visits Plaintiff cited also document a normal gait. The exam results Plaintiff relies upon, in many instances, appear to mimic or copy office notes and examination results verbatim throughout Plaintiff's treatment. The recommendation to elevate Plaintiff's feet above heart level 20 minutes a day is a very different recommendation than needing to elevate her feet at 20-minute intervals while sitting, yet they are sometimes recommended in the same visit (*see, e.g.,* (R. 700, 703)). Plaintiff is correct that these recommendations repeat throughout the record, but they likewise appear almost as a form recommendation regardless of Plaintiff's symptoms or progress.

The portions submitted by Plaintiff do not undermine the ALJ's evaluation such that the Court can say that ALJ incorrectly considered the record in this case. Plaintiff may disagree with the portions of the record that the ALJ decided to cite, but there is nothing to suggest that the records were misquoted or incorrectly summarized. Instead, the decision shows thoughtful examination and consideration of the record as a whole. *See Vergara v. Comm'r of Soc. Sec.* 2023 WL 5814433, *3 (11th Cir., 2023) (recognizing that the ALJ adequately explained his treatment of the medical opinion before explaining that the question before the Court is whether substantial evidence supports the ALJ's decision and not a particular medical opinion). Although Plaintiff

may have preferred that the ALJ cite to or give more weight to additional evidence and adopt the limitations recommended by Dr. Osh, the Court may not reweigh the evidence considered by the ALJ to match Plaintiff's preferences. *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1314 (11th Cir. 2021) (citing *Winschel*, 631 F.3d at 1178).; *Mitchell v. Comm'r. Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) ("We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner.").

The ALJ did not ignore Plaintiff's symptoms and allegations but instead found that she was not as limited as she alleged and that the severe limitations suggested by Dr. Osh were not supported. The ALJ credited Plaintiff's conditions by limiting the amount of time she can walk or stand during the workday in the RFC. The ALJ thoroughly discussed Plaintiff's complaints and documented ailments, but the ALJ was also entitled to point to other portions of the entire record, including Plaintiff's continued work activity,[1] as reasons to discount Plaintiff's symptoms and Dr. Osh's medical opinions. The decision is well articulated, and it shows the ALJ considered the record as a whole. There is no error with the manner in which the ALJ considered Dr. Osh's records when developing Plaintiff's RFC, and thus substantial evidence supports the evaluation of the medical opinions of Dr. Osh and the resulting RFC.

*The ALJ's Step Five Analysis*

Plaintiff also argues that ALJ's determination at step five is not supported by substantial evidence because the jobs referenced in the decision do not exist in significant numbers. (Doc. 14, p. 17-20). This argument mirrors Plaintiff's post-hearing objection regarding the number of

[1] Plaintiff also argued that the ALJ improperly considered her work activity under *Lewis v. Callahan*, 125 F.3d 1436 (11th Cir. 1997). (Doc. 14, p. 15). This argument is misplaced. The *Lewis* court rejected the ALJ's reliance on activities like housework, fishing, and a short treadmill test to demonstrate that the claimant could perform sustained work activities. *Lewis*, 125 F.3d at 1441. The decision does not foreclose the ALJ from factoring in any type of work activity, like Door Dash delivery, which applies to Plaintiff in this case.

available job positions (Ex. 25F), which the ALJ considered and rejected in the decision. (R. 29). Because the record and the decision fail to explain how the ALJ resolved the discrepancies between the VE's testimony and the available job numbers documented in the post-hearing objection, the Court cannot say the ALJ's step five findings are supported by substantial evidence.

At step five of the disability analysis, it is the ALJ's role to "ascertain whether the jobs that a claimant can perform exist in significant numbers in the national economy." *Viverette*, 13 F.4th at 1318 (quoting *Biestek v. Berryhill*, 587 U.S. 97, 100 (2019)) (cleaned up). "Whether there are a significant number of jobs a claimant is able to perform with [her] limitations is a question of fact to be determined by [the ALJ]." *Viverette,* 13 F.4th at 1318 (also citing *Brooks v. Barnhart*, 133 F. App'x 669, 670 (11th Cir. 2005) ("The ALJ, relying on the VE's testimony, and not the VE, determines whether a specific number of jobs constitutes a significant number.")

As noted above, the ALJ found that Plaintiff could perform work as an office helper, table worker, and machine tender, and adopted the VE's testimony regarding the number of positions available, 100,000 jobs, 92,000 jobs, and 98,000 jobs, respectively. (R. 29). The ALJ acknowledged that the VE provided the incorrect DOT number for "office helper" but rejected the Plaintiff's post-hearing challenge to the VE's testimony. (R. 29). The ALJ also found that even without the misnumbered office helper position, the remaining jobs that Plaintiff could perform existed in significant numbers such that a finding of not disabled was warranted as step five. (*Id.*)

The ALJ did not dispute the veracity of the statistics submitted by Plaintiff's hearing representative (Ex. 25), which are raised again here by Plaintiff .[2] (Doc. 14, p. 17-20). Instead, before adopting the job numbers offered by the VE, the ALJ found that any discrepancy resulted

[2] For easier reference, Plaintiff presented database information showing the following available positions: office helper (5285 jobs), table worker (55 jobs), and machine tender (4 jobs). (R. 404, 410, 412, 418).

from the VE's use of other sources to support his testimony. (R. 29). However, the record, hearing transcript, and decision are silent about what those other sources are. The VE testified that he used his experience and another unknown, inaudible source to support his testimony about things *not* found in the DOT titles, but he specifically said he used the DOT, Bureau of Labor statistics, and the Job Browser Pro database for his testimony about the number of available jobs. (R. 71-73). Nothing explains how the VE arrived at numbers exponentially larger than the job numbers found by Plaintiff in the sources the VE cited in his testimony. *See* (R. 72; Ex. 25). Without more, the Court cannot determine where the VE's cited numbers came from or whether the ALJ's resolution of the objection and ultimate decision to adopt the VE's testimony are supported by substantial evidence.

There is no specific threshold number of jobs or positions that have to exist for a step five analysis to be supported. *See Brooks*, 133 F. App'x at 670-671 (finding that 840 positions represented a significant number) (also citing *Allen v. Bowen,* 816 F.2d 600, 602 (11th Cir. 1987) as an example where 174 positions established the existence of work in significant numbers). Thus, it is conceivable that the 5,285 available office worker positions alone could constitute a "substantial number," but the ALJ's decision provides no guidance that the ALJ made such a finding. Instead, he found significant job numbers remained if the office worker position was *excluded*. (R. 29). This conclusion potentially leaves far fewer available positions, potentially fewer than 65, for the jobs Plaintiff could perform.

In the face of these unknowns that the decision and record fail to explain, the Court cannot find that substantial evidence supports this portion of the ALJ's step five analysis. *See Viverette*, 13 F.4th at 1318 ("Where additional (or more specific) agency fact-finding is needed, remand is the appropriate disposition.") Plaintiff's case is therefore remanded to the Commissioner.

## CONCLUSION

The Court finds no error in how the ALJ considered the medical opinion in this case. However, the Court is unable to determine whether substantial evidence support the ALJ's step five analysis, which led to the conclusion that Plaintiff was not disabled.[3] Therefore, Plaintiff's case is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).

**SO ORDERED**, this 15th day of September, 2026.

s/ Charles H. Weigle__________
Charles H. Weigle
United States Magistrate Judge

[3] The Court's finding that the ALJ's consideration of the medical record and RFC finding were supported by substantial evidence is not a finding that the conclusions were correct and should not be read to restrict the ALJ from giving further consideration to Dr. Osh's records and findings as to the extent of Plaintiff's disability.